J-S29045-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DARRIN CHARLE SAUNDERS | : | |
| | : | |
| Appellant | : | No. 325 WDA 2022 |

Appeal from the Judgment of Sentence Entered October 6, 2021
In the Court of Common Pleas of Beaver County Criminal Division at
No(s): CP-04-CR-0000381-2020

BEFORE:   PANELLA, P.J., MURRAY, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                    **FILED: JANUARY 17, 2023**

Appellant, Darrin Charle Saunders, appeals from the judgment of sentence of 4½ to 10 years' incarceration, imposed after he was convicted by a jury of burglary, conspiracy to commit burglary, criminal trespass, theft by unlawful taking, and receiving stolen property.[1]   After careful review, we affirm.

This case arises out of break-ins at and thefts from the home of Walter Lapic (Victim) in Daugherty Township, Pennsylvania between September 1, 2019 and January 17, 2020.  Appellant was charged with burglary, conspiracy

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 3502(a)(2), 903(a)(i), 3503(a)(1)(ii), 3921(a), and 3925(a), respectively.

to commit burglary, criminal trespass, two counts of theft by unlawful taking, one for theft of firearms and the other for theft of other property, and two counts of receiving stolen property, one for stolen firearms and the other for property other than firearms. On April 24, 2020, Appellant filed a motion to suppress evidence seized from the house where he had been living on the ground that the affidavit of probable cause for the warrant under which the search and seizure were conducted allegedly contained an intentional, material misstatement. Omnibus Pretrial Motion § III(A), ¶¶12-28. Following a hearing, the trial court denied Appellant's motion to suppress. Trial Court Order, 9/18/20.

The seven charges against Appellant were tried to a jury from August 31, 2021 to September 2, 2021. At trial, Victim testified that he had copper scrap stored in the basement of his house and that he reported to the police in September 2019 that this copper was missing. N.T. Trial, 9/1/21, at 123-28, 160-63. Victim also testified that guns, a lamp made from a gun, tools, guitars, car parts and other items were stolen from his house after he temporarily moved out in December 2019 and identified as his a number of items that were found in the house where Appellant was living. *Id.* at 128-46, 158-60. Victim's brother testified that in September 2019 when he was at a nearby scrap yard in Rochester, Pennsylvania, he saw boxes of copper wire and copper pipe that were wound and folded in the peculiar way that Victim kept these items. *Id.* at 89-95, 106. Victim's brother also testified

that on January 16, 2020, he checked on Victim's house after Victim had recently moved in with another relative, found that the house had been broken into, and boarded it up. *Id.* at 77-79, 89, 96. Victim's brother testified that the next day, January 17, 2020, he saw several individuals burglarizing Victim's house. *Id.* at 79-87.

Anthony Besiso, in whose house Appellant and Appellant's girlfriend were living, testified that he drove Appellant and Appellant's girlfriend to Victim's house in September 2019 and that when he came back to pick them up, Appellant and Appellant's girlfriend were carrying buckets of scrap metal. N.T. Trial, 9/1/21, at 243-44, 249-50, 270-73; N.T. Trial, 9/2/21, at 12, 14. Besiso testified that he later drove Appellant to a scrap yard in Rochester, Pennsylvania where Appellant exchanged the scrap metal for cash. N.T. Trial, 9/1/21, at 249-50, 273-74. Besiso also testified that Appellant told him that there was an abandoned house to which he liked to go and that Appellant had antiques, car parts, guitars and other items at Besiso's house, including items that Victim identified as his. *Id.* at 252-61. An employee of the Rochester scrap yard testified that the scrap yard's records showed that an individual who was identified as Appellant by his driver's license sold copper to the scrap yard in September 2019. *Id.* at 281-84, 296-99, 302-03.

Two other witnesses testified concerning the January 17, 2020 burglary of Victim's house. These witnesses, however, testified that the January 17, 2020 burglary was committed by four individuals other than Appellant and,

while there was testimony that those perpetrators knew Appellant, neither of these witnesses testified that Appellant had any involvement in the January 17, 2020 burglary.  N.T. Trial, 9/1/21, at 175, 179-81, 184-92, 206-13; N.T. Trial, 9/2/21, at 20-27, 30-35, 41-42.

On September 2, 2021, the jury convicted Appellant of burglary, conspiracy to commit burglary, criminal trespass, one count of theft by unlawful taking of property other than firearms, and one count of receiving stolen property other than firearms, finding that the value of the stolen property was more than $200 but less than $2,000.  N.T. Trial, 9/2/21, at 137-40; Verdict Sheet at 1-3.  The jury acquitted Appellant of the theft by unlawful taking and receiving stolen property counts that were based on theft of firearms and possession of stolen firearms.  N.T. Trial, 9/2/21, at 138; Verdict Sheet at 2.

On October 6, 2021, the trial court sentenced Appellant to consecutive terms of 30 to 60 months' incarceration and 24 to 60 months' incarceration for the burglary and conspiracy to commit burglary convictions and concurrent terms of 16 to 120 months' incarceration, 6 to 60 months' incarceration, and 6 to 60 months' incarceration for the criminal trespass, theft by unlawful taking, and receiving stolen property convictions, resulting in an aggregate sentence of 4½ to 10 years' incarceration.  N.T. Sentencing at 21-23; Sentencing Order.  Appellant filed a post-sentence motion in which he sought, *inter alia*, a new trial on the ground that the verdict was against the weight of

the evidence. Post-Sentence Motion at 2. On February 3, 2022, the trial court denied Appellant's post-sentence motion in its entirety. Trial Court Order, 2/3/22. This timely appeal followed.

Appellant presents the following three issues for our review:

[1.] Was the evidence insufficient as a matter of law to sustain the convictions for burglary and criminal conspiracy to commit burglary?

[2.] Were the guilty verdicts for burglary and criminal conspiracy to commit burglary against the weight of the evidence presented at trial?

[3.] Did the suppression court err by denying the Defendant's motion to suppress the evidence seized during the execution of the search warrant on January 17, 2020, based upon intentional material misstatements of fact contained in the affidavit of probable cause that rendered the search warrant invalid?

Appellant's Brief at 8 (suggested answers omitted). None of these issues merits relief.

Our standard of review in a challenge to the sufficiency of the evidence is well-settled:

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence.

*Commonwealth v. Reed*, 216 A.3d 1114, 1119 (Pa. Super. 2019).

The burglary offense with which Appellant was charged required proof that Appellant without license or privilege and "with the intent to commit a crime therein, … enter[ed] a building or occupied structure, or separately secured or occupied portion thereof that is adapted for overnight accommodations." 18 Pa.C.S. § 3502(a)(2), (b).  Appellant argues that the evidence was insufficient to support his convictions for burglary and conspiracy to commit burglary because the evidence allegedly showed only that Appellant stole copper scrap from a sawmill on Victim's property, not that he entered and stole from a building or structure adapted for overnight accommodations.  This argument misstates the evidence at trial.

Victim testified that copper scrap that he had in the basement of his house was missing in early September 2019 and that he was living in the house at the time.  N.T. Trial, 9/1/21, at 118, 123-28, 147, 160-63.  While Victim also testified that copper that he stored in a separate sawmill building was stolen, he testified that the theft from the sawmill was a different incident that had happened years earlier.  *Id.* at 123-24, 163-64.  Victim also testified that he never permitted Appellant to come into his house or take anything from his house.  *Id.* at 147.  Another witness, Besisio, testified that in September 2019 he drove Appellant and Appellant's girlfriend to Victim's house and that when he later picked them up, they were carrying buckets of scrap metal.  *Id.* at 249, 270-73; N.T. Trial, 9/2/21, at 12, 14.  The evidence

also showed that in September 2019 near the time that Victim reported the theft of copper scrap from his house, Appellant sold copper scrap to a scrap yard and that copper scrap was found at that scrap yard that was wound and folded in the distinctive way that Victim prepared and kept his copper scrap. N.T. Trial, 9/1/21, at 89-95, 106, 281-84, 296-99, 302-03. This circumstantial evidence, in combination, was sufficient for the jury to conclude that Appellant entered Victim's house, a building adapted for overnight accommodations, without Victim's permission to steal copper scrap from Victim's house.

Appellant also argues that there was not sufficient evidence that Appellant had any involvement in the January 17, 2020 burglary to convict him of conspiracy with respect to that burglary. That assertion is correct.[2] The fact that the Commonwealth did not prove that Appellant conspired with the perpetrators of the January 17, 2020 burglary of Victim's home to commit that burglary, however, does not make the evidence insufficient to prove conspiracy to commit burglary. The evidence showed that Appellant committed the September 2019 burglary with his girlfriend and that they were

_____

[2] Although there was testimony from one of the January 17, 2020 burglars that two of the other burglars told her that Appellant said that they could remove property from Victim's house, N.T. Trial, 9/1/21, at 208-10, that testimony cannot prove that Appellant conspired with the January 17, 2020 burglars, as it was hearsay admitted solely to show that burglar's state of mind and was not admitted as substantive evidence that Appellant made the statement. N.T. Trial, 9/2/21, at 112-13.

assisted by Besiso, who drove them to Victim's house, picked them up with the stolen copper, and drove Appellant to the scrap yard to sell the stolen copper. N.T. Trial, 9/1/21, at 249-50, 270-74; N.T. Trial, 9/2/21, at 12, 14. That evidence of joint participation and assistance from those two other individuals is sufficient to prove conspiracy to commit the September 2019 burglary. **Reed**, 216 A.3d at 1122-23 (evidence that defendant and his girlfriend went to and from the building that was broken into together and were together in the building was sufficient to prove conspiracy); **Commonwealth v. Galindes**, 786 A.2d 1004, 1010 (Pa. Super. 2001) (evidence that two co-defendants went to house together and both attempted to kick in door was sufficient to prove conspiracy).

Appellant's second issue similarly fails. A new trial may be granted on the ground that the verdict is against the weight of the evidence only where the verdict was so contrary to the evidence that it shocks the trial court's sense of justice. **Commonwealth v. James**, 268 A.3d 461, 468 (Pa. Super. 2021); **Commonwealth v. Antidormi**, 84 A.3d 736, 758 (Pa. Super. 2014). Our review of the denial of a motion for a new trial based on weight of the evidence is limited. We review whether the trial court abused its discretion in concluding that the verdict was not against the weight of the evidence, not whether the verdict, in this Court's opinion, was against the weight of the evidence. **Commonwealth v. Clemons**, 200 A.3d 441, 463-64 (Pa. 2019); **Commonwealth v. Delmonico**, 251 A.3d 829, 837 (Pa. Super. 2021).

> Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge …. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence.

*Antidormi*, 84 A.3d at 758 (quoting *Commonwealth v. Clay*, 64 A.3d 1049 (Pa. 2013)) (brackets omitted).

Appellant's challenge to the weight of the evidence is simply a rehashing of his contention that the evidence was insufficient to prove that Appellant entered and stole from Victim's house and conspired to do so. As discussed above, however, the evidence was sufficient to prove those facts. The trial court, who heard the witnesses' testimony and observed their demeanor, found that there was nothing shocking in the jury's conclusion that this evidence was credible. Trial Court Opinion, 2/3/22, at 10. Appellant does not point to any evidence that the trial court failed to consider or contend that any item of evidence supporting the verdict was clearly incredible or contradicted by evidence that should have been given greater weight. Appellant therefore has not shown that the trial court abused its discretion in ruling that the verdict was not against the weight of the evidence.

In his final issue, Appellant argues that the trial court erred in denying his motion to suppress evidence.

> Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the

suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous.

*Commonwealth v. Andrews*, 213 A.3d 1004, 1014 (Pa. Super. 2019) (quoting *Commonwealth v. Mbewe*, 203 A.3d 983 (Pa. Super. 2019)). In reviewing whether the trial court's findings are supported by the record, we may consider only the evidentiary record from the suppression hearing. *Commonwealth v. Heidelberg*, 267 A.3d 492, 499 (Pa. Super. 2021) (*en banc*); *Andrews*, 213 A.3d at 1014.

The January 17, 2020 affidavit for the warrant to search the house where Appellant was living stated that a witness had told police that that house "had been and is currently" being used to hide property stolen from Victim's house. Search Warrant Affidavit. Appellant contends that this statement by the police officer affiant was false because the witness only stated that she had been in the house in September 2019. Appellant argues this invalidated the search warrant and that suppression was therefore required because the search violated his rights under the Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution.

A search warrant that is based on deliberate misstatements of fact is invalid if those false statements were necessary to support a finding of probable cause. *Franks v. Delaware*, 438 U.S. 154, 155–56, (1978); *Commonwealth v. Burno*, 154 A.3d 764, 782 (Pa. 2017). The mere

- 10 -

presence of an error in the affidavit of probable cause, however, does not automatically invalidate the warrant. *Andrews*, 213 A.3d at 1015; *Commonwealth v. Baker*, 24 A.3d 1006, 1017-18 (Pa. Super. 2011), *aff'd on other issue*, 78 A.3d 1044 (Pa. 2013). The Fourth Amendment and Article I, Section 8 do not require suppression of evidence unless the misstatement was deliberate or made in reckless disregard for the truth. *Andrews*, 213 A.3d at 1014-15; *Baker*, 24 A.3d at 1017-18; *Commonwealth v. Gomolekoff*, 910 A.2d 710, 715 (Pa. Super. 2006). "[M]isstatements of fact will invalidate a search warrant and require suppression of the fruits of the search only if the misstatements of fact are deliberate and material." *Baker*, 24 A.3d at 1017 (emphasis omitted) (quoting *Commonwealth v. Tucker*, 384 A.2d 938 (Pa. Super. 1978)). Whether a misstatement in an affidavit of probable cause was made deliberately or in reckless disregard of the truth is a question of fact to be determined by the trial court. *Baker*, 24 A.3d at 1017.

Here, the trial court held a hearing on Appellant's suppression motion at which the police officer who prepared and swore to the search warrant affidavit testified. The trial court found, based on that testimony, that the officer's statement in the affidavit of probable cause was not deliberately or knowingly false. Trial Court Opinion, 9/18/20, at 7. The trial court further found that the officer had reason to believe from his conversations with the witness that she had been in the house recently. *Id.* These factual findings

- 11 -

are supported by the record. The officer, who the trial court found credible, *id.*, testified that he understood from speaking to the witness that she had recently been at the house for which the search warrant was sought and that the witness talked about that house as if that was a place that she was "very familiar with going to and from and had done so recently." N.T. Suppression Hearing at 23-24, 27-30, 46-50.

Appellant argues that the officer had to know that the witness had not been in the house recently because on January 17, 2020, the day that the warrant was obtained and the search was conducted, the witness in a recorded interview only mentioned being at the house in September 2019 and gave a written statement to the police in which she stated only that in September 2019 she was at the house and was shown items being stored there and was asked to sell them. Kerns Statement at 3-4; N.T. Suppression Hearing at 33, 35. We do not agree that these facts required the trial court to find the officer's testimony incredible or that his statement in the affidavit of probable cause was deliberately false or in reckless disregard of the truth.

The officer who prepared and swore to the affidavit of probable cause did not take the written statement from the witness or conduct the recorded interview and based his knowledge on conversations with the witness before the recorded interview and written statement. N.T. Suppression Hearing at 30, 32-36, 42, 48-49. The officer further testified that he did not see the witness's written statement before he filed the affidavit of probable cause. *Id.*

at 30-32, 48, 55-56. This testimony is supported by the time when the events in question occurred. The record showed that the warrant was signed by the magisterial district judge at 6:53 p.m. on January 17, 2020, and the witness's written statement was not completed until 7:10 p.m. N.T. Suppression Hearing at 30, 60-62; Kerns Statement at 1. Because the trial court found that the statements in the affidavit of probable cause were not deliberately false or made in reckless disregard of the truth and that factual finding is supported by the record from the suppression hearing, Appellant failed to show that the search warrant was invalid and his suppression motion was properly denied. *Andrews*, 213 A.3d at 1014-15; *Baker*, 24 A.3d at 1017-18; *Gomolekoff*, 910 A.2d at 715.

For the foregoing reasons, we conclude that none of Appellant's claims of error is meritorious. Accordingly, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  01/17/2023

- 13 -